UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Paula Jeanne Martel

    v.                                  Civil No. 20-cv-1135-JD
                                        Opinion No. 2021 DNH 098

Andrew M. Saul, Commissioner,
Social Security Administration

O R D E R

Paula Jeanne Martel moves, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to reverse the decision of the Commissioner that denied her application for benefits under Title II and Title XVI of the Social Security Act. In support, she contends that the Administrative Law Judge ("ALJ") erred in evaluating the medical opinions in the record as to Martel's functional limitations. The Commissioner moves to affirm.

Standard of Review

For purposes of review under §§ 405(g) and 1383(c)(3), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more

than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154.  The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In making a disability determination, an ALJ follows a five-step process, asking "questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433.  The steps are as follows: (Step 1) whether the claimant is currently engaging in substantial gainful activity; if not, (Step 2) whether the claimant has a severe impairment; if so, (Step 3) whether the impairment meets or medically equals an entry in the Listing of Impairments; if not, (Step 4) whether the claimant's residual functional capacity ("RFC") is sufficient to allow her to perform any of her past relevant work; and if not, (Step 5) whether, in light of the claimant's RFC, age, education, and work experience, she can make an adjustment to other work available in the national economy.  Id. (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v)).  The claimant bears the burden of showing

she is disabled through the first four steps, but at Step 5 the Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do. Id. at 434.

## Background

Martel applied for benefits under Title II and Title XVI in August of 2018, alleging disability based on Stage 1 breast cancer, thyroid cancer, Graves' disease, fibromyalgia, Sjogren's syndrome, and arthritis that began on May 15, 2018. She was forty-four years old at the time of her application. Her applications were denied, and she sought a hearing before an ALJ, which was held in October of 2019. The ALJ issued an unfavorable decision on November 15, 2019.

Martel was diagnosed with breast cancer in May of 2018. She had a lumpectomy on August 22, 2018, and then was treated with chemotherapy and radiation. She tolerated the cancer treatment poorly, experiencing a variety of symptoms, which included significant fatigue. Chemotherapy was stopped in December of 2018. By April of 2019, she reported to APRN Hall that she was still experiencing episodes of fatigue but her symptoms were mild.

Martel also sought mental health treatment after the lumpectomy. During her therapy sessions, she focused on her cancer diagnosis. The record includes opinions from treating

providers and from consulting and non-examining state physicians.

In the decision denying benefits, the ALJ found that Martel had severe impairments caused by breast cancer, thyroid cancer, a neurocognitive disorder, and depression. Despite those impairments, the ALJ found that she had the residual functional capacity to do light work, with some limitation in climbing and postural activities. The ALJ also found that she was able to perform simple, routine tasks. Based on those findings and the testimony of a vocational expert, the ALJ determined that Martel could do certain identified work and was not disabled. The Appeals Council denied Martel's request for review.

## Discussion

Martel challenges the ALJ's evaluation of the medical opinions in the record. Specifically, she argues that the ALJ misinterpreted the record as not supporting the opinions provided by APRN Hall and Dr. Civiello, which caused him not to give sufficient weight to those opinions.[1] She contends that the ALJ improperly relied on the opinions of reviewing consultants,

---

[1] Although Martel appears to criticize Dr. Stenslie's opinion about her mental functioning in the introduction section of her memorandum, she does not address the opinions about her mental functioning in her argument or argue that the ALJ's assessment of her mental functioning was wrong. The Commissioner, nevertheless, argues that the ALJ properly relied on the opinions addressing Martel's mental functioning.

4

Dr. Jaffe and Dr. Dorsey, when their opinions were based on an incomplete record. In support of the motion to affirm, the Commissioner contends that the record supports the ALJ's evaluation of the opinions of APRN Hall and Dr. Civiello and that the opinions of the consulting physicians provided substantial evidence because subsequent medical records did not show any reduction in her functional capabilities.

A. <u>Evaluation of Provider Medical Opinions</u>

For purposes of determining whether a claimant is disabled, the ALJ considers medical opinions in the record in light of the following factors:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
> (3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.
> (i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
> (ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

>        (iii) Purpose of the treatment relationship.  The
> purpose for treatment you received from the medical source
> may help demonstrate the level of knowledge the medical
> source has of your impairment(s).
>        (iv) Extent of the treatment relationship.  The kinds
> and extent of examinations and testing the medical source
> has performed or ordered from specialists or independent
> laboratories may help demonstrate the level of knowledge
> the medical source has of your impairment(s).
>        (v) Examining relationship.  A medical source may have
> a better understanding of your impairment(s) if he or she
> examines you than if the medical source only reviews
> evidence in your folder.
>        (4) Specialization.  The medical opinion or prior
> administrative medical finding of a medical source who has
> received advanced education and training to become a
> specialist may be more persuasive about medical issues
> related to his or her area of specialty than the medical
> opinion or prior administrative medical finding of a
> medical source who is not a specialist in the relevant area
> of specialty.
>        (5) Other factors.  We will consider other factors
> that tend to support or contradict a medical opinion or
> prior administrative medical finding.  This includes, but
> is not limited to, evidence showing a medical source has
> familiarity with the other evidence in the claim or an
> understanding of our disability program's policies and
> evidentiary requirements.  When we consider a medical
> source's familiarity with the other evidence in a claim, we
> will also consider whether new evidence we receive after
> the medical source made his or her medical opinion or prior
> administrative medical finding makes the medical opinion or
> prior administrative medical finding more or less
> persuasive.

20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).  To evaluate the persuasiveness of a medical opinion, the factors of supportability [(c)(1)] and consistency [(c)(2)] are the most important.  § 404.1520c(b)(2).

6

1. APRN Hall

John Hall treated Martel as an APRN at Lee Family Practice for breast cancer, chronic fatigue, and depression.[2] He completed a "Physical Impairment Medical Source Statement" form on September 20, 2019. Doc. 6-10, at *15-*19. APRN Hall listed Martel's physical symptoms as arm pain and profound fatigue or exhaustion, and he listed the clinical findings as anemia, edema, and limited range of motion and also checked that she had depression and anxiety that affected her physical condition. He indicated that Martel's pain would "daily" interfere with her ability to perform even simple work tasks, that she was incapable of doing even low stress jobs because she was recovering from treatment after breast cancer surgery, that she could lift ten pounds occasionally and lift up to twenty pounds rarely, and that she could stand and walk for less than two hours and sit for only about two hours, along with many other limitations.

2. Dr. Civiello

Dr. Civiello, an oncologist, treated Martel for breast cancer. She completed a Physical Impairment Medical Source Statement form on October 21, 2019. Dr. Civiello stated that after the lumpectomy procedure and during and after radiation

---

[2] APRN stands for Advanced Practice Registered Nurse.

and chemotherapy treatment, Martel had fatigue, neuropathy-type pain, general body pain, irritable bowel symptoms, and anxiety. She also stated that Martel was being monitored because of liver lesions.

Dr. Civiello gave her opinion that Martel would frequently experience pain during a workday.  Dr. Civiello indicated that Martel's pain would frequently interfere with her ability to perform even simple work tasks.  She stated that Martel could walk one to two city blocks without rest or severe pain, she could sit for up to thirty minutes at one time, she could stand for up to five minutes, and she could sit, stand, and walk in combination for up to two hours in a work day.  Dr. Civiello stated that Martel would need unscheduled breaks, would need to be able to move at will, would need to keep her legs elevated 50% of the time, could lift up to ten pounds only occasionally, could never lift more than ten pounds, and had other limitations in her activities.

### 3. ALJ's Evaluation

The ALJ acknowledged that Martel experienced reduced functioning during treatment for breast cancer, but found that the reduced functioning did not last for twelve months.  The ALJ found that APRN Hall's opinion was not persuasive because it was not consistent with his treatment notes that describe Martel's

symptoms after treatment for breast cancer as mild and stated that she was recovering nicely from her cancer treatment. The ALJ also noted that by May of 2019 Martel reported that she was functioning at 70% and the treatment notes stated that she was in no acute distress.[3]

In evaluating the opinion provided by Dr. Civiello, the ALJ found that the limitations were not supported by or consistent with the record. The ALJ noted that other examinations showed no deficits in Martel's strength, sensation, reflexes, or range of motion because of pain. The ALJ also noted that Dr. Civiello did not record neuropathic pain in her treatment notes. The ALJ

---

[3] Martel argues that the phrase "in no acute distress" means only that she was not experiencing or about to experience a crisis when she was being examined. She provides a web link in support that provides a document titled "Premier of Team Health" that appears to be dated February 14, 2013.

The Commissioner disputes Martel's interpretation. Contrary to Martel's interpretation, the phrase "in no acute distress" is commonly used in medical treatment notes and is interpreted by courts in this circuit to mean a relatively normal state or a lack of pain or a lack of disabling symptoms. See, e.g., McCusker v. Saul, 2020 WL 6580598, at *7 (D.N.H. Nov. 10, 2020) ("the treatment notes described her as comfortable or in no acute distress, except for one visit when Nurse Johnson described her as in pain"); Stafford v. Saul, 2020 WL 5868424, at *7 (D.N.H. Oct. 1, 2020); Matthews v. Saul, 2020 WL 4904759, at *12 (D. Mass. Aug. 20, 2020) (citing treatment note that claimant "appears comfortable in no acute distress"); Berthiaume v. Saul, 2020 WL 1933947, at *4 (D.N.H. Apr. 22, 2020). Courts in the Seventh Circuit, however, have interpreted the phrase differently. See, e.g., Nowak v. Saul, 2021 WL 1263753, at *10 (E.D. Wisc. Apr. 6, 2021). In the absence of information in the record suggesting that Martel's providers were using the phrase differently than is commonly understood, Martel's interpretation is not persuasive.

9

further noted that Martel reported physical activities during physical therapy that far exceed her functional capacity with the limitations found by Dr. Civiello. In addition, the ALJ pointed out that the opinions provided by APRN Hall and Dr. Civiello were not consistent with each other.

4. Result

Martel contends that the ALJ misinterpreted the treatment notes to find inconsistencies with the opinions and points to notes that support the opinions. She also contends that her more rigorous activities caused pain. As the Commissioner explains, however, Martel's symptoms and limitations during cancer treatment might support her provider's opinions of disabling limitation, but those limitations are in contrast to her improvement after treatment was completed.

To be eligible for social security benefits, a claimant must have disabling impairments for at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). For that reason, the ALJ supportably found that the opinions based on Martel's symptoms and limitations during her cancer treatment were not persuasive.

B. Opinions of Reviewing Consultants

In assessing Martel's residual functional capacity, the ALJ relied on opinions provided by state agency consultants Dr.

10

Jaffe and Dr. Dorsey. They found that Martel could lift and carry up to twenty pounds occasionally and ten pounds frequently, and could stand, walk, and sit for six hours each in a workday. Those functional capacity findings support a residual functional capacity to perform light work.

Dr. Jaffe's opinion is dated March 13, 2019, and Dr. Dorsey's opinion is dated May 21, 2019. The ALJ noted that that there was evidence submitted after those opinions were rendered but found that the later evidence "does not support any more significant limitations." Doc. 6-2, at *48. Specifically, the ALJ stated that while Martel continued to be treated for episodes of lymphedema and incontinence, her more recent examinations did not show any significant changes. The ALJ also noted that Martel had reported physical activities with greater functioning during that period.

Martel contends that the consultant opinions cannot provide substantial evidence to support the ALJ's residual functional capacity assessment because the later evidence showed continued pain and fatigue symptoms. The opinion of a state-agency consultant physician does not provide substantial evidence to support an ALJ's residual functional capacity assessment if the opinion is based on a significantly incomplete record, meaning that the basis for assessing the claimant's limitations has changed for the worse. Devine v. Saul, 2020 WL 7029849, at *14

11

(D. Mass.) (citing Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007)); Blakely v. Saul, 2019 WL 4668020, at *(5 (D.N.H. Sept. 25, 2019).  In this case, Martel cites no evidence that shows her functional capacity deteriorated after May of 2019.  Instead, as the ALJ demonstrated, the evidence does not show increased limitations and, instead, supports fewer limitations.

Therefore, the ALJ did not err in giving the opinions of Dr. Jaffe and Dr. Dorsey significant weight, and those opinions provide substantial evidence to support the ALJ's residual functional capacity assessment.


## Conclusion

For the foregoing reasons, Martel's motion to reverse (document no. 7) is denied.  The Commissioner's motion to affirm (document no. 8) is granted.

The decision of the Commissioner is affirmed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 17, 2021
cc:  Counsel of record.